DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Rico Sims, appeals from the decision of the Summit County Court of Common Pleas, finding him guilty of aggravated burglary, aggravated robbery, and kidnapping. We affirm.
 {¶ 2} The incident giving rise to these charges occurred on December 1, 2004. Defendant and his friend, Marlon Terry (Terry), were accused of breaking into Defendant's neighbor's apartment after 10:00 p.m. The neighbor, Dorothy Williams (Williams), saw Defendant making a phone call from her phone. Shortly after that, Terry demanded that Williams give them the cash she had received from her social security check, which had just arrived that day. When Williams refused, *Page 2 
Terry began stabbing her with a steak knife, slapping and kicking her, ransacking her apartment and screaming obscenities at her. Williams still refused to give Terry any money, and Terry then held Williams on her couch and instructed Defendant to look in her bedroom for the money, which he did. Later, Terry told Defendant to hold Williams to keep her from leaving the apartment, which he did. After approximately one hour, Terry and Defendant left Williams's house, taking her portable phone handsets with them and telling her not to move or to call the police, or they would kill her. Williams crawled on her hands and knees to another neighbor's apartment and called the police.
 {¶ 3} When the police arrived at the house, they found that the bedroom had been ransacked and there were puncture holes in the couch. The police also found two steak knives sitting on the window ledge outside the house. Williams later identified the pictures of Terry and Defendant in a photo array at the police station. On December 2, 2005, at 2:30 a.m., police arrested Defendant and Terry at Defendant's house.
 {¶ 4} The grand jury indicted both Defendant and Terry on charges of kidnapping, robbery and burglary, and the jury trial took place on April 18, 2006. Defendant and Terry were tried together, and were represented by court-appointed attorneys who were from the same law firm. Defendant was represented by Attorney Thomas Bauer, and Terry was represented by Attorney Bruce Conrad. Prior to the trial, the prosecutor asked that the record reflect that she and the *Page 3 
defendants and their counsel had discussed the possibility of a conflict of interest arising from representation by attorneys from the same firm, but that Terry and Defendant had waived any conflict. The judge then made the following inquiry:
 "THE COURT: Attorney Bauer.
 "MR. BAUER: Your Honor, on behalf of my client, we waive any potential conflict that there would be that Mr. Conrad and myself are representing these two because we are in the same office.
 "THE COURT: All right. We have gone over this previously, but we will do it again.
 Mr. Sims, the fact that you are represented by Attorney Bauer, who is in the same office as Attorney Conrad, there may or may not be an appearance of a conflict of interest.
 In other words, your attorney must zealously represent you, as Mr. Conrad must zealously represent his client's interests.
 In any event, are you indicating on the record that you are waiving any potential conflict of interest or appearance of a conflict of interest, if any, due to the fact that the codefendant's counsel, Mr. Conrad, is in the same office as Attorney Bauer?
 "DEFENDANT SIMS: Yes.
 "THE COURT: All right. Attorney Conrad.
 "MR. CONRAD: Your Honor, throughout this matter I have indicated to Mr. Terry that there is a potential for conflict. At this time, I believe that no such conflict has actually arisen. *Page 4 
 But, however, he is aware that that potential existed, and I will ask the Court to inquire of him regarding the waiver.
 "THE COURT: Mr. Terry, again, I am going to ask you the same question.
 There may or may not be an appearance of a conflict of interest or a genuine conflict of interest, although the Court does not believe the later [sic].
 But in any event, do you waive any alleged or appearance or the possible conflict of interest, if any there may be by the fact that cocounsel is Thomas Bauer, who is in the same office as your attorney, Attorney Bruce Conrad?
 "DEFENDANT TERRY: Yes, ma'am.
 "THE COURT: All right. Have either of the defendants been promised anything in order to make this waiver?
 "DEFENDANT TERRY: No, ma'am.
 "DEFENDANT SIMS: No, ma'am.
 "THE COURT: Has anybody forced you or coerced you into waiving this conflict?
 "DEFENDANT TERRY: No, ma'am.
 "DEFENDANT SIMS: No, ma'am.
 "THE COURT: All right. The Court will recognize that that [sic] knowing or that there is a knowing, intelligent, voluntary waiver of any conflict of interest."
 {¶ 5} The jury trial lasted approximately one full day. The witnesses for the prosecution included Williams, the two police officers who investigated the *Page 5 
incident, and a friend of Defendant's who had been subpoenaed to testify. Williams and the arresting officers set out the facts as indicated above. Defendant's friend, Brittany Armstead (Armstead), testified that she knew Defendant and that he called her on her cell phone with some regularity. She identified a call from Williams's phone bill that was placed from Williams's number to Armstead's cell phone at 10:30 p.m. on the night of the incident.
 {¶ 6} The defense offered two witnesses who gave only alibi testimony. First, Defendant's mother testified that she finished work sometime between 10:00 and 10:15 p.m. on the evening in question, and then walked home via the Citgo, where she bought cigarettes. She estimated that she was home by 10:45 p.m., and that when she arrived the men were sitting on the sofa watching the game. The other defense witness was Terry, who testified that he and Defendant had been watching the game. He did remember that Defendant had left the apartment for "less than three minutes," but that they had watched the game together the rest of the time.
 {¶ 7} The defense questioned the credibility of the prosecution witnesses, particularly Williams. Defense counsel continually questioned Williams's identification of the men who robbed her, and repeatedly asked about how intoxicated she was at the time.
 {¶ 8} The jury found Defendant guilty of aggravated robbery in violation of R.C. 2901.11(A)(1); aggravated burglary in violation of R.C. 2911.11(A)(1); *Page 6 
and kidnapping in violation of R.C. 2905.01(A)(3), each first degree felonies. The court sentenced him to concurrent prison term of seven years for each violation.
 {¶ 9} Defendant timely appeals, raising one assignment of error:
 FIRST ASSIGNMENT OF ERROR "[Defendant] was denied assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and by Article 1 Section 10
of the Ohio Constitution when the trial court failed to adequately address the conflict presented by the appointment of lawyers from the same law office for [Defendant] and co-defendant."
 {¶ 10} Defendant argues that his constitutional right to the assistance of counsel was violated when he and his co-defendant were represented by attorneys from the same firm. We disagree.
 {¶ 11} The Supreme Court of Ohio has clearly outlined the procedure for addressing conflicts of interest in the trial court. "It is not constitutionally mandated that a trial court inquire of co-defendants whether they wish to have separate counsel. * * * However, * * * the better practice is to make a prompt inquiry and advise each defendant of his or her right to effective assistance of counsel, including separate representation[.]" State v. Manross (1988), 40 Ohio St.3d 180, 181-82,532 N.E.2d 735. When that inquiry has been conducted by the trial court and a defendant has not objected to the joint representation, he must "demonstrate [on appeal] that an actual conflict of interest adversely affected his lawyer's performance" in order to establish a claim of ineffective assistance of counsel. Id., at 182. The mere possibility that a conflict could exist does not *Page 7 
establish that one did exist. Id. See, also, State v. Mohrman (Dec.4, 2002), 9th Dist. No. 02CA008053, 2002-Ohio-6610, at ¶ 12; State v.Harris (Dec. 22, 1999), 9th Dist. No. 98CA007142, at *2.
 {¶ 12} "The term `conflict of interest' bespeaks a situation in which regard for one duty tends to lead to disregard of another," such as a situation in which an attorney represents two co-defendants with divergent interests. Manross, 40 Ohio St.3d at 182. "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." Id., citing Columbus Bar Assn. v. Grelle (1968), 14 Ohio St.2d 208,237 N.E.2d 298. A defendant may show an actual conflict by demonstrating that his attorney refused to pursue a line of defense because a conflict prevented him from doing so. See Harris at 5. However, "[t]here is no conflict where the two defenses did not result in one [defendant's] assigning blame to the other and where both defendants had a common interest in attacking the credibility of the prosecution witnesses."Manross, 40 Ohio St.3d at 182.
 {¶ 13} In this case, although Defendant and Terry were not represented by the same attorney, the trial court rightly inquired of them regarding the potential for a conflict of interest. Defendant explicitly waived any objection. As stated in Manross, we must then determine whether an actual conflict arose during the representation of Defendant and Terry that would have violated Defendant's constitutional right to the effective assistance of counsel. We find that one did not. *Page 8 
 {¶ 14} The defenses employed by Defendant and his co-defendant consisted of attacking the credibility of the prosecution's witnesses and of providing alibi testimony that implicated neither defendant. Defendant argues that Attorney Bauer was in the untenable position of having to cross-examine his own associate's client. However, the only information he elicited during that cross examination was that the phones at Defendant's house were not working, and that Defendant had to order pizza from Williams's house and was gone for only a few minutes. This information supported the theory put forth by Defendant that he visited Williams's house that evening, but that he was there only long enough to make one or two short phone calls.
 {¶ 15} According to the Court's decision in Manross, a defense that does not have the effect of inculpating a co-defendant does not create a conflict of interest for one attorney defending multiple co-defendants. Moreover, other courts have held that when attorneys from the same firm represent co-defendants in a criminal matter, a conflict of interest does not necessarily arise. State v. Welsh, 8th Dist. No. 81028, 2002-Ohio-7062, at ¶ 22-23. Instead, a co-defendant in such a situation must demonstrate on appeal that an actual conflict arose, in keeping with standard for demonstrating the ineffective assistance of trial counsel as set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. Welsh, at ¶ 27. The court in Welsh found that the appellant could not prove actual prejudice because the defendants made no attempt to assign blame to one another for the *Page 9 
crime, and because the appellant had provided the court with no instance of an alternative defense that could have been pursued were it not for his counsel's alleged conflict. Id. at ¶ 28.
 {¶ 16} In this case we must reach the same conclusion. We find that Defendant clearly and knowingly waived any objection to a possible conflict, and that no actual conflict ever arose during his trial. Defendant and his co-defendant never presented evidence inculpating each other. Moreover, Defendant has provided no alternate defense that his trial counsel did not pursue because of a conflict he faced. Defendant's assignment of error is without merit, and we affirm the decision of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 10 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1